UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JOSE ARIZMENDI-DEPAZ,<br><br>　　　　　　　　　　　Defendant. | Case No.: 18-CR-4949<br><br>**ORDER GRANTING MOTION TO DISMISS COUNT ONE OF THE INDICTMENT UNDER 8 U.S.C. § 1326**<br><br>[Dkt. No. 26] |

Defendant Jose Arizmendi-Depaz moves to dismiss Count One of the Indictment against him on the grounds that his prior removal was invalid and cannot support a prosecution under 8 U.S.C. § 1326. Upon review of the moving papers and the applicable law, and for the reasons discussed below, the Court **GRANTS** the motion.

## BACKGROUND

In October 2018, Mr. Arizmendi was arrested by a Border Patrol agent near the United States border by Tecate, California. (Dkt No. 14, at 1.) On November 15, 2018, a federal grand jury in this district returned an indictment charging Mr. Arizmendi with being a removed noncitizen found in the United States in violation of 8 U.S.C. § 1326(a), and knowingly eluding examination and inspection by immigration officers in violation of 8 U.S.C. § 1325(a)(2). (*Id.*)

Mr. Arizmendi was born in the Republic of Mexico in 1983 and first came to the United States when he was approximately 14 years of age. (Dkt. No. 26-2, ¶ 1.) He initially resided with his brother in Fallbrook, where he attended Fallbrook High School until twelfth grade. (Dkt. No. 26-1, at 2.) Mr. Arizmendi later moved to Encinitas, California and found work at a car wash. (*Id.*) In 2003, he began a relationship with a DACA recipient. (*Id.*) Together, they have four children. (*Id.*) Mr. Arizmendi also has another daughter from a relationship with a U.S. citizen. (*Id.*) Mr. Arizmendi's deportation reportedly had a "tragic effect on his five children." (Dkt. No. 26-7). Letters offered by Mr. Arizmendi's daughter Jessica and neighbors paint a picture of a hard-working man well known in the community for helping his neighbors and raising respectful and bright children, including one in high school who carries a 4.0 grade point average. (Dkt. Nos. 26-6, 26-7, 26-8).

On April 4, 2011, Mr. Arizmendi was served with a Notice of Intent to Reinstate a removal order from April 15, 2008. (Dkt. No. 31-1.) He had last entered the United States on May 12, 2008 by walking through the hills near San Ysidro. (Dkt. No. 31-2, at 3.) Upon receiving the Notice of Intent to Reinstate, Defendant's family retained counsel who thereafter notified Immigration and Customs Enforcement of the representation of Mr. Arizmendi and requested parole to permit an application for cancellation of removal. (Dkt. No. 26-15.) That same day, April 4, 2011, he was removed from the United States to Mexico. (Dkt. No. Doc. 31-3.) Two weeks later, on April 21, 2011, Mr. Arizmendi attempted to enter the United States from Mexico by falsely presenting a counterfeit I-551 Resident Alien Card. (Dkt. Nos. 26-14, 31-4); *see United States v. Flores*, 901 F.3d 1150, 1155 (9th Cir. 2018) (defining I-551).

Thereafter, an immigration inspector issued an order of expedited removal pursuant to Section 235(b)(1) of the INA. (Dkt. No. 26-14.) The order indicated that Mr. Arizmendi was ineligible to enter the United States under INA section 212(a)(6)(C)(ii) because he had falsely represented a counterfeit "temp I-551" in attempt to gain entry into the United States. (*Id.*) During his processing thereafter, Mr. Arizmendi produced a

sworn statement indicating that he purchased the false document in the streets in Mexico, knew the document was false, and presented the document to the immigration officer to gain admission to the United States, knowing that was a violation of the laws of the United States. (Dkt. No. 26-2, ¶ 4.) Mr. Arizmendi declares he was not permitted to review his sworn statement or have it read to him before signing it. (*Id.*) He also indicated that he did not understand the importance of the documents he was being asked to sign and was never informed of his ability to request withdrawal of his application for admission as an alternative to having a removal order entered. (*Id.*) Nevertheless, Mr. Arizmendi was removed to Mexico from the United States on May 21, 2011. (Dkt. No. 31-7.)

## **DISCUSSION**

Mr. Arizmendi challenges his indictment under 8 U.S.C. § 1326 by contesting the validity of his April 21, 2011 expedited removal, which serves as the predicate removal in his § 1326 prosecution.[1] (Dkt. No. 26-1, at 2.) As discussed below, the underlying removal was invalid and cannot support a prosecution under 8 U.S.C. § 1326.

### I.     Framework for Collateral Attack under § 1326(d)

In *United States. v. Mendoza-Lopez*, the Supreme Court held that in a § 1326 prosecution, an underlying deportation or removal order must comport with the constitutional requirement of due process and afford a defendant with the right to challenge the prior removal in advance of trial. 481 U.S. 828, 837 (1987). This right to challenge the validity of a prior deportation removal order has been codified at 8 U.S.C. § 1326(d). *See United States. v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015).

Under § 1326(d), to successfully challenge a removal order, a noncitizen must demonstrate (1) that he exhausted administrative remedies that may have been available to seek relief against the order; (2) that the removal proceedings improperly deprived him

---

[1] On May 10, 2019, the United States withdrew its opposition to defendant's motion to dismiss based upon the 2008 Stipulated removal proceeding and "will rely solely upon the 2011 Expedited Removal" in this case. (Dkt. No. 37.)

of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755–756.

## II. Administrative Exhaustion

Expedited removals of inadmissible arriving noncitizens, like Mr. Arizmendi, do not provide for administrative review except in the instance of a noncitizen claiming asylum or claiming to be a legal permanent resident. 8 U.S.C. § 1225(b)(1)(C); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011). As Mr. Arizmendi was neither at the time of the expedited removal order, the Court concludes that there were no administrative remedies available for Mr. Arizmendi to exhaust.

## III. Deprivation of Judicial Review

As to a meaningful opportunity for judicial review, that too is categorically foreclosed by expedited removal proceedings brought under 8 U.S.C. § 1225. "Congress expressly deprived courts of jurisdiction to hear a direct appeal from an expedited removal order." *Barajas-Alvarado*, 655 F.3d at 1081; 8 U.S.C. § 1252 ("Judicial review of orders of removal"); *see also* 8 U.S.C. § 1225(b) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 212(a)(6)(C) or 212(a)(7), the officer shall order the alien removed from the United States without further hearing or review . . . ."). As the *Barajas-Alvarado* court specifically concluded, "the INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order [under 8 U.S.C. § 1225]." 655 F.3d at 1082. Since Mr. Arizmendi was entitled to "some meaningful review" of the proceedings resulting in the expedited removal orders which he claims are fundamentally unfair, the Court next considers whether these proceedings were fundamentally unfair and he suffered prejudice as a result. *Id.* (citing *Mendoza-Lopez*, 481 U.S. at 838).

## IV. Fundamental Unfairness

To establish that a predicate removal was "fundamentally unfair," a noncitizen must demonstrate that the proceeding (1) violated the noncitizen's due process rights and

4

(2) that the noncitizen suffered prejudice as a result. *Id.* at 1085. A noncitizen can only establish prejudice by demonstrating that grounds for relief were plausibly available at the time of removal. *Id.* at 1089.

Mr. Arizmendi argues that his April 21, 2011 expedited removal was invalid because he was not (1) informed of the charge against him, (2) informed of the specific laws rendering him inadmissible, (3) given an opportunity to review his sworn statement, or (4) given an opportunity to consult with his retained attorney. (Dkt. No. 26-1, at 8.) He contends that that these violations prejudiced him because if he was offered these procedural protections, he would have asked to withdraw his application for admission to the United States and immediately departed. (*Id.* at 13.)

**A. Denial of Due Process**

The regulations governing expedited removal proceedings codify, in mandatory terms, the immigration officer's duty to inform the alien of the charge against him and to allow the alien to review the sworn statement prepared in his name. *See* 8 C.F.R. § 235.3(b)(2)(i) ("The examining immigration officer shall advise the alien of the charges against him or her . . . , and the alien shall be given an opportunity to respond to those charges in the sworn statement."); *see also id.* (requiring the examining officer to take the alien's sworn statement and to "have the alien read (or have read to him or her) the statement").

Not every violation of a regulation rises to the level of a due process violation. *See, e.g., United States v. Caceres*, 440 U.S. 741, 751–52 (1979). However, some regulations protect due process and other constitutional rights such as those that provide notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (identifying "notice and [an] opportunity for [a] hearing appropriate to the nature of the case" as the "essential principle[s] of due process"). Here, applicable regulations require immigration officers to advise an alien of the charge against him and to permit the alien to read or be read the sworn statement prepared in his name protect those fundamental due process rights: notice of the charge the alien faces and the alien's

opportunity to respond to that charge. Any failure to inform Mr. Arizmendi of the charge against him and to provide him the opportunity to review the sworn statement would constitute a violation of his due process rights. *See United States v. Raya-Vaca*, 771 F.3d 1195, 1204–05 (9th Cir. 2014).

The I-867A Record of Sworn Statement is made up of four pages with each page initialed by Mr. Arizmendi and followed by a I-867B Jurat that attests to the truthfulness and completeness of a statement "consisting of 1 pages (sic)". (Dkt. No. 31-5, at 1-5.) The I-867B Jurat is deficient because it fails to reference the entire four-page statement and therefore fails to affirm the accuracy of all four pages of the statement. Page one of the I-867B indicates that the statement was given in the Spanish language. (*Id*. at 1.) Although page one is set forth in both English and Spanish, everything after the middle of the second page is in English only. *Id*. This supports the conclusion that Mr. Arizmendi was unable to read the entire statement in the Spanish language. In addition, the first page and a half did not address the grounds for Mr. Arizmendi's inadmissibility.

Mr. Arizmendi asserted in his declaration signed under penalties of perjury, that officers had him sign some documents without being "given an opportunity to review the documents before signing." (Dkt. No. 36-1, at 1 (Decl. of Jose Arizmendi-Depaz, dated May 10, 2019).) After answering officer's questions, Mr. Arizmendi states that no one read any documents to him. Nor was he told of any option to withdraw his application. In its response to Mr. Arizmendi's declaration, the Government does not provide an explanation for the deficiencies identified above or offer any responsive declaration rebutting Mr. Arizmendi's claims.

To further fortify the contention that the inspectors failed to comply with the applicable requirements, Mr. Arizmendi cites a United States Commission on International Freedom study which disclosed that 72% of aliens in expedited removal proceedings had not had the I-867B Jurat form read by or to them in spite of certifications in 100% of the cases that they were signed as required. (Dkt. No. 26-1, at 10.)

The above supports Mr. Arizmendi's claims that no immigration officer read to

6

18-CR-4949

him the Notice to Alien or explained to him either the nature of the removal proceedings or that he could be ordered removed from the United States. The deficiencies identified in this case are similar to those identified by the Ninth Circuit as evidencing a due process violation in *Raya-Vaca*. *Cf. Raya-Vaca*, 771 F.3d at 1205 (jurat described a four-page statement as "this statement, consisting of 1 pages (including this page)" where none of the questions on the page spoke to the alien's admissibility). Meanwhile, the Government does not argue that the immigration officer complied with the regulation at issue by advising Mr. Arizmendi of the charge against him and reading to him, or allowing him to read, the sworn statement. Like *Raya-Vaca*, the Court concludes that Mr. Arizmendi's declaration, the error on the Jurat and the failure to contest his allegations supports the conclusion that the immigration officer failed to advise Mr. Arizmendi of the charge against him and to permit him to review the sworn statement, in contravention of his due process rights.

Because the regulatory violation here constituted a denial of Mr. Arizmendi's right to notice and an opportunity to respond, no showing of prejudice by the failure to comply with the regulation is necessary to establish a due process violation. *Id.* Accordingly, the Court concludes that Mr. Arizmendi has established a due process violation and thus satisfied the first requirement for showing that his April 21, 2011 removal order was fundamentally unfair. Next, the Court considers the prejudice issue.

**B. Prejudice**

To demonstrate the prejudice, a defendant must establish that he had "plausible grounds" for obtaining the immigration relief withheld. "Where the relevant form of relief is discretionary, the alien must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *Barajas–Alvarado*, 655 F.3d at 1089 (internal quotation marks omitted).

Withdrawal of an application for admission is a discretionary form of relief. *See* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission

and depart immediately from the United States."); 8 C.F.R. § 1235.4; *see also United States. v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2012). Thus, to obtain relief via § 1326(d), Mr. Arizmendi must demonstrate that it was at least plausible that this request for withdrawal of application for admission would have been granted. *United States v. Garcia-Gonzalez,* 791 F.3d 1175, 1177 (9th Cir. 2015).

The Court's analysis on this issue follows two steps: first, it considers "the factors relevant to the [agency's] exercise of discretion for the relief being sought," and then it determines "whether, in light of the [relevant] factors . . . and based on the unique circumstances of [defendant's] own case, it was plausible that the agency official considering [his] case would have granted" Mr. Arizmendi's request to withdraw his application for admission. *Id.* at 1206.

### 1. Relevant Factors

With respect to withdrawal of application, "immigration officers are guided by. . . 8 C.F.R. § 1235.4, as well as the Inspector's Field Manual." *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1020 n.9 (9th Cir. 2011). The applicable regulation codifying the right to seek withdrawal of application provides as follows:

> The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings. . . . The alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission. Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately.

8 C.F.R. § 1235.4.

The Ninth Circuit also refers to the factors enumerated in the INS's Inspector's Field Manual, an internal agency document which guides an immigration inspector's discretion under 8 C.F.R. § 1235.4. *Barajas-Alvarado*, 655 F.3d at 1090 n.16. As noted in *Raya-Vaca*, the "Field Manual, while not entitled to the force of law, provides helpful insight as to when relief is plausible. . . ." 771 F.3d at 1207.

The Inspector's Field Manual instructs immigration officers that "[i]n exercising your discretion to permit withdrawal, you should carefully consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice." INS Inspector's Field Manual § 17.2(a) (2007), *available at* Westlaw FIM-INSFMAN 17.2, 2007 WL 7710869. It further provides that "[i]n light of the serious consequences of issuing an expedited removal order, which includes a 5-year bar to re-entry, the decision of whether to permit withdrawal should be based on a careful balancing of relevant favorable and unfavorable factors in order to reach an equitable decision." *Id.*

Such factors might include, but are not limited to: (1) "the seriousness of the immigration violation," (2) "previous findings of inadmissibility against the alien," (3) "intent on the part of the alien to violate the law," (4) "ability to easily overcome the ground of inadmissibility," (5) "age or poor health of the alien," and (6) "other humanitarian or public interest considerations." *Id.* The Field Manual also "identifies germane considerations, noting in particular that withdrawal should 'ordinarily' not be permitted 'in situations where there is obvious, deliberate fraud on the part of the applicant.'" *Barajas-Alvarado*, 655 F.3d at 1090. The Ninth Circuit has stated that such fraud has a "'disqualifying effect' given the Field Manual's focus on obvious, deliberate fraud on the part of the applicant." *Garcia-Gonzalez*, 791 F.3d at 1179 (quoting *Barajas-Alvarado*, 655 F.3d at 1091).

### 2. Plausibility Standard

To demonstrate prejudice, Mr. Arizmendi must demonstrate that it was at least plausible that this request for withdrawal of application for admission would have been granted pursuant to the above factors.

The plausibility standard for § 1326(d) is comparable to the kind of plausibility articulated in *Twombly/Iqbal*. *See Raya-Vaca*, 771 F.3d at 1207. A defendant "cannot succeed by merely showing a theoretical possibility of relief," *see United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012), but "[c]ertainly, he need not show that he

9

definitely would have received immigration relief," or even that "relief was probable." *Raya-Vaca*, 771 F.3d at 1207 (internal quotation marks and alterations omitted). Mr. Arizmendi can satisfy the plausibility standard so long as he produces "some evidentiary basis on which relief could have been granted." *Reyes-Bonilla*, 671 F.3d at 1050; *see also United States v. Corrales-Belt*ran, 192 F.3d 1311, 1318 (1999) (to demonstrate plausibility, defendant must prove that provision of the process denied "could . . . have yielded a different result" (*quoting United States v. Gutierrez-Alba*, 128 F.3d 1324, 1326 (9th Cir. 1997)).

In making this determination, courts may not rely exclusively on general statistics. *Barajas-Alvarado*, 655 F.3d at 1091 (defendant seeking to prove plausibility by way of "a general statistic" that relief was granted fifty percent of the time for all applicants could not prevail "based on this fact alone"); *Raya-Vaca*, 771 F.3d at 1209 (in the Ninth Circuit, "statistics alone cannot establish the plausibility of relief"). At the same time, statistics may bear on plausibility when they are particularized to the unique circumstances of the defendant and buttressed by specific comparator cases. *See Raya-Vaca*, 771 F.3d at 1209 (concluding that the statistical "data provide relevant context for the frequency with which withdrawal was permitted and, when considered in conjunction with other individualized evidence supporting the plausibility of relief, cuts in Raya-Vaca's favor"). Consistent with the foregoing authority, this court must eschew "general statistics," and "[i]nstead, . . . focus[es] on whether aliens with similar circumstances received relief." *Rojas-Pedroza*, 716 F.3d at 1263.

### 3. Discussion

With the above factors and plausibility standard in mind, the Court proceeds to analyze and weigh the relevant facts relating to Mr. Arizmendi's case.

*a. Seriousness of the Immigration Violation and Intent to Violate the Law*

The first and third Field Manual factors weigh against Mr. Arizmendi because his immigration violation was serious, as the manner of his entry manifested an intent to

10

18-CR-4949

violate the law. Like the defendant in *Barajas-Alvarado*, Mr. Arizmendi knowingly misrepresented his identity and presented false documents to gain admission to the United States. *See* 655 F.3d at 1090; *Garcia-Gonzalez*, 791 F.3d at 1179 (holding that when there is deliberate fraud on the part of applicant, the first and third factors from the Field Manual weigh strongly against discretionary relief).

### b. Previous Findings of Inadmissibility Against the Alien

As to the second factor, the Court finds that it also weighs against the plausibility of relief. Mr. Arizmendi was previously found inadmissible on April 15, 2008, when he left the United States via stipulated removal. The Notice to Appear charged him with being inadmissible under § 212(a)(6)(A)(i) of the INA, which deems any noncitizen not admitted or paroled to be inadmissible. (Dkt. No. 26-9.) A previous finding of removability—even an invalid one—weighs against the plausibility of relief. *See Garcia-Gonzalez*, 791 F.3d at 1179 ("Without regard to whether it would support a § 1326 conviction, Garcia's removal in 2003 means the second factor from the Field Manual weighs against the availability of discretionary relief."); *see also Barajas-Alvarado*, 655 F.3d at 1090 (finding that second factor weighs against the noncitizen because he had two previous removals).

The timing of Mr. Arizmendi's April 21, 2011 expedited removal presents yet another consideration weighing against the plausibility of relief. On April 4, 2011, just two weeks prior to his expedited removal, Mr. Arizmendi was removed from the United States vis stipulation. (Dkt. No. 31-3.) The immediacy of Mr. Arizmendi's stipulated removal to his expedited removal proceeding, suggests that he did not intend to depart from the United States immediately, as required by regulation. *See* 8 C.F.R. § 1235.4 ("Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately."). Accordingly, the Court finds that the previous finding and timing of his expedited removal weighs against the plausibility that Mr. Arizmendi would have received a discretionary grant of relief. At the same time, The Court recognizes that recidivist

11

immigration violators have and are permitted to withdraw their application for admission. *Raya-Vaca*, 771 F.3d at 1208.

### c. Age and Health of Applicant

As to the fifth factor, there is no indication in the record that Mr. Arizmendi was in poor health in 2011 and, at around the age of 28, he was neither a youth nor elderly. (Dkt. No. 26-2, ¶ 1); *see Barajas-Alvarado*, 655 F.3d at 1090 (finding that this factor cut against plausibility of relief because the defendant, at 35, was neither "a youth nor elderly"); *Cisneros*, 656 F.3d at 1021 (concluding that a 25-year-old defendant did not count as a positive factor in the plausibility analysis). This factor is, at best, neutral. *See Raya-Vaca*, 771 F.3d at 1208 (concluding that "apparent good health" and age of a 30-year-old noncitizen did not support assertion of plausible relief).

### d. Ability to Readily Overcome the Ground of Inadmissibility

The fourth Field Manual factor, however, weighs in Mr. Arizmendi's favor. This factor instructs immigration officials to assess whether the noncitizen could have nonetheless overcome the ground of inadmissibility charged in the removal order. *See Raya-Vaca*, 771 F.3d at 1209 n.13 (observing that the noncitizen need only overcome the ground of inadmissibility he was charged with, regardless of whether the noncitizen might have been inadmissible on other grounds). The Field Manual explains: "If the alien may readily overcome the inadmissibility by obtaining proper documents, the alien may be permitted to withdraw his or her application for admission and should also be appropriately advised of the necessary forms and requirements to overcome the grounds of inadmissibility." INS Inspector's Field Manual § 17.2(a). Case law has further indicated that whether the noncitizen has a visa petition pending, or can obtain a visa through a spouse or other relative, are additional considerations probative of whether the noncitizen may be able to overcome the inadmissibility ground. *See Raya-Vaca*, 771 F.3d at 1208 (considered pending visa petitions and marriage to a United States citizen spouse as positive equities under the fourth prong).

Here, Mr. Arizmendi was found inadmissible for lack of proper entry documents

under INA §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I). (Dkt. No. 26-14.) Specifically, the Notice and Order of Expedited Removal states that Mr. Arizmendi "willfully misrepresented [his] true identity and [was] not in possession of a valid entry document as is required by the act." (*Id.*) While Mr. Arizmendi has not produced evidence demonstrating that he had a right to remain in the country or that he had any visa petitions pending in 2011, Mr. Arizmendi has presented a set of mitigating circumstances that the Government concedes, "perhaps could have overcome grounds of inadmissibility." (Dkt. No. 31-1, at 13.)

In addition, Mr. Arizmendi has offered facts which relate to his eligibility for a U-visa which is available to victims of certain crimes who assist law enforcement in the investigation or prosecution of the perpetrators. Police reports show that Mr. Arizmendi was a victim of an attempted murder in 2010 when two assailants shot at Mr. Arizmendi while he was walking home. He assisted law enforcement authorities in the investigation of the crime. These facts and the Government's concession reveal that Mr. Arizmendi had a background and history to overcome the inadmissibility ground. *Cf. Cisneros-Rodriguez*, 813 F.3d at 761–62 (plausible that Cisneros, a felon, would have obtained a U-visa in the view of DHS data that USCIS ultimately grants over 70 percent of U-visa applications and facts warranting relief which included alien living most of her life in the United States; marriage to a U.S. citizen; and raising two U.S. citizen children).

### e. Other Humanitarian or Public Interest Considerations

As to humanitarian or public interest considerations that existed in 2008, Mr. Arizmendi cites his three U.S. citizen children, his partner carrying a fourth child, and his family depending on him for support, as weighing in his favor. (Dkt. No. 26-1, at 15.) There is a "compelling humanitarian interest in keeping families united," so the humanitarian and public interest factors weigh in Mr. Arizmendi's favor. *United States v. Haro–Munoz*, 552 F. App'x 689, 690 (9th Cir. 2014); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that an alien's "right to rejoin [his] immediate family . . . ranks high among the interests of the individual"); 8 U.S.C. § 1182(d)(11) (INA "family

13

unity" provision for the waiver of inadmissibility recognizing that "assur[ing] family unity" is in the public interest). As in *Raya-Vaca*, the Court concludes that "under the final factor identified by the Manual, [Mr. Arizmendi] presents significant humanitarian considerations counseling in favor of relief . . . [because his] partner [] and their children . . . currently live in the United States." 771 F.3d at 1208.

Beyond these family circumstances, Mr. Arizmendi's has shown that his removal has had a "tragic effect" on his children. (Dkt. No. 26-7). This information provides an additional measure of impact that Mr. Arizmendi's absence has had on his children which speaks to the humanitarian interest in keeping families united. It weighs in Mr. Arizmendi's favor.

### f. Relevant Favorable and Unfavorable Factors

#### i. Work History and Lack of Criminal History

Mr. Arizmendi also relies on the length of his residence in the United States, work history and lack of criminal history, to support his argument that withdrawal was plausible. These considerations are ones that are salient under the Field Manual's directive to consider "all facts and circumstances related to the case" and to engage in "a careful balancing of relevant favorable and unfavorable factors in order to reach an equitable decision." INS Inspector's Field Manual § 17.2(a). Given these directives, the applicant's work history, lack of criminal history and length of time in the United States are certainly "circumstances related to the case" and are relevant in reaching an equitable decision and weigh in favor of relief. *Id.*

While they are relevant, the Ninth Circuit instructs that these considerations are entitled to limited weight. *See Barajas-Alvarado*, 655 F.3d at 1091 (seriousness of the crimes for which applicant was removed, and his ties to the United States are not listed as considerations in the Field Manual and therefore carry little weight); *see also United States v. Garcia-Gonzalez*, No. 12cr04471 BTM, 2013 WL 1562540, at *5 (S.D. Cal. 2013) (defendant's family ties carry "little weight"); *but see Raya-Vaca*, 771 F.3d at 1209 (taking note of the defendant's "fairly minimal" misdemeanor criminal history).

## ii. Statistics and Alien Comparators

Finally, Mr. Arizmendi offers statistics and comparable cases which provide an additional measure of support for the plausibility of relief. However, with respect to statistics, the Ninth Circuit has made clear that "plausibility" requires more than general statistics such as ones that reveal that discretionary relief applications are granted fifty percent of the time. *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999). In *Corrales–Beltran*, defendant failed to offer anything more than this general statistic to establish the requisite "plausible showing" that the specific facts of his case would warrant a favorable exercise of discretion. *Id.* Thus, while "statistics alone cannot establish the plausibility of relief," *Raya–Vaca*, 771 F.3d at 1209, the data may "provide reasonable baseline against which to assess the plausibility of relief in [Mr. Arizmendi's] individual case." *Cisneros-Rodriguez*, 813 F.3d at 762.

In the instant case, however, Mr. Arizmendi provides more than just the "general statistic" disapproved of by *Corrales-Beltran*. Here, Mr. Arizmendi has proffered both a set of narrowly-refined statistics, as well as three comparator cases involving aliens who previously attempted to enter with fraudulent documents and thereafter received permission to withdraw their application.

First, Mr. Arizmendi submits statistics obtained as a result of a FOIA request to the U.S. Customs Border Protection for "statistical data for individuals inadmissible under INA 212(a)(6)(c)(fraud) in 2013." (Dkt. No. 16-21, at 2.) The 2013 statistics report that approximately 13.4% of fraudulent applicants for admission into the United States received permission to withdraw their application. By narrowing its focus on aliens who sought to enter with fraudulent documents, the statistic provides additional indicia tying it to an individual with Mr. Arizmendi's profile. As a starting point, the 2013 statistics focus on a more refined group of aliens than the general statistic rejected in *Corrales-Beltran* which covered all discretionary relief applicants. Significantly, the 2013 statistics identify aliens who share key characteristics with Mr. Arizmendi in that they too faced the disqualifying effect of fraud on their application for withdrawal.

Additionally, Mr. Arizmendi has also offered three cases processed between 2009 and 2011 in which individuals in the Southern District of California were granted withdrawal of application for admission after attempting to enter the United States with fraudulent documents. (*See* Dkt. Nos. 26-16, 26-17, 26-18, 26-20). These cases bear on plausibility because in assessing the alien's showing, the Court is directed to "focus on whether aliens with similar circumstances received relief." *Rojas-Pedroza*, 716 F.3d at 1263. Mr. Arizmendi asks the Court to find that the following Southern District of California cases involve similar circumstances to his:

1. Jose Carlos Garcia - granted withdrawal in 2009 after he made a false claim to United States citizenship and pleaded guilty to making a false statement to a federal officer under 18 U.S.C. § 1001. (Dkt. No. 26-16, Exhibit O (Form I-275[2]).) Garcia had been previously convicted of vehicle theft and being a felon in possession of a firearm and was sentenced to 16 months in prison. (Dkt. No. 26-17, Exhibit P (plea and sentencing summary chart).) In addition, Garcia had also been previously lawfully removed by an immigration judge in 2007.

2. Omar Argueta-Rosales - granted withdrawal in 2011 after presenting a California Birth Certificate, social security card, and ID not lawfully issued to him and pleaded guilty to a violation of 8 U.S.C. § 1326. He had previously been ordered removed in 2006 and had no pending petitions; (Dkt. No. 26-18, Exhibit Q (Form I-275).)

3. J.O.D. - granted withdrawal in 2011 after presenting another person's LPR card in attempting to gain entry to the United States. (Dkt. No. 26-20, Exhibit S (Form I-275).) In addition, alien had been previously convicted of attempted entry after deportation and sentenced to six months in custody. (*Id.*) He had been previously

---

[2] Form I-275 is a U.S. Department of Homeland Security document titled "Withdrawal of Application for Admission/Consular Notification." According to the Field Manual, immigration officers are directed to prepare a Form I-275 after a favorable determination as to relief, and after appropriate supervisory approval. *See* INS Inspector's Field Manual § 17.2(a).

16

18-CR-4949

excluded and removed and had no petitions or applications pending. These three cases share a number of similarities with Mr. Arizmendi's case. Each involves a case involving fraud which triggered the disqualifying effect on an application to withdraw application. None of the aliens, like Mr. Arizmendi, had a pending application seeking admission. Each alien had been previously excluded or removed. Notwithstanding these negative factors, each was permitted to withdraw his application.

According to the Ninth Circuit, the impact of these statistics and comparators is limited by the fact that they do not explain why relief was granted. *See Barajas–Alvarado*, 655 F.3d at 1091 n.17. Yet such an explanation might never arise in a withdrawal of application context. Indeed, neither Mr. Arizmendi or any other defendant can establish why relief was granted in the 13.4% of cases that received permission for withdrawal: there are no reporting requirements which mandate an officer to explain the reasons for exercising his discretion in favor of withdrawal.[3] Nor is there any right to appeal a denial of a withdrawal application to expand the pool of comparable cases.

As a result, Mr. Arizmendi has relied on available evidence: targeted statistics for aliens inadmissible due to fraud and comparator cases that bear similarities to his. *See Raya-Vaca*, 771 F.3d at 1209 (record of withdrawal of application by individual with a conviction for misdemeanor burglary and false identification to a police officer, no pending petitions for legal status, and three prior exclusion orders showed relief was plausible under the circumstances). Mr. Arizmendi did not have a prior conviction, a further aggravating factor that the three comparator aliens had suffered. With respect to the first three Field Manual factors, Mr. Arizmendi is essentially in an equivalent position

---

[3] The current Withdrawal of Application regime is not designed to provide information about what positive factors motivate the grant of relief in any given case. As described in the the Field Manual, officers grant withdrawal relief by issuing a Form I-275. But in so issuing, inspectors are required only to "clearly state the reasons for *inadmissibility* in the remarks block." INS Inspector's Field Manual § 17.2(a) (emphasis added). There is no corresponding duty to state what positive equities motivated a favorable determination. Form I-275 itself provides a similar instruction: "include all pertinent facts concerning denial of application for admission, including use of altered, counterfeit or fraudulent documents." (*See, e.g.*, Dkt. No. 26-16, at 2.)

to the three aliens who obtained relief. Meanwhile, as to the remaining factors, Mr. Arizmendi has presented evidence which weigh in his favor on two of the three (overcoming ground of admissibility and humanitarian considerations).

### g. *Relief was Plausible Given Mr. Arizmendi's Unique Circumstances*

There is no dispute that Mr. Arizmendi falsely represented himself using a counterfeit I-551. (*See* Dkt. Nos. 26-14, 31-4.) Accordingly, he engaged in the kind of "deliberate fraud" contemplated by the Field Manual as "ordinarily" disqualifying an applicant from withdrawal of an application. *See* INS Inspector's Field Manual § 17.2(a).

Mr. Arizmendi compares his particular circumstances to those in *Raya-Vaca*, where the Ninth Circuit found that permission to withdraw an admission application was plausible. *See* 771 F.3d at 1211. Had this case not involved fraud, the Court would find the analogy apt; however, as the *Raya-Vaca* court observed "[f]irst and foremost, Raya-Vaca committed no fraud, let alone obvious or deliberate fraud, when entering the United States." *Id.* "Therefore a crucial consideration that, according to the Inspector's Field Manual, 'ordinarily' militates against withdrawal—and a consideration of singular importance in *Barajas-Alvarado*, 655 F.3d at 1090—is absent here." *Id.*

To overcome the disqualifying effect created by his use of fraudulent documents to enter the United States, Mr. Arizmendi is required to show that his case is more than an "ordinary" case. On one hand, the case is ordinary compared to other immigration cases to the extent that Mr. Arizmendi was employed and had lived in the United States with family members who included U.S. citizen children. *Cf. United States v. Muro-Inclan*, 249 F.3d 1180, 1185 (9th Cir. 2001) (appellant did not establish a plausible claim to relief under 8 U.S.C. § 212(h) where "[t]he hardships alleged by Appellant represent the common results of deportation, and do not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support.").

However, what is extraordinary is the reported tragic effect that deportation had on Mr. Arizmendi's children, which goes beyond the loss of family support and raises

humanitarian and public policy concerns. Also, the fact that Mr. Arizmendi had been the victim of a crime of violence the year before, was eligible for a U visa, and could have assisted law enforcement in the investigation and prosecution of dangerous criminals in the community is certainly extraordinary and may qualify as a factor that removes the disqualifying effect of fraud. *Cisneros-Rodriguez*, 813 F.3d at 759 (applicant for a U-visa may apply under 8 U.S.C. § 1182(d)(14) to waive grounds that would ordinarily bar her admission to the United States, including certain criminal convictions).

In addition to presenting facts which are extraordinary, Mr. Arizmendi has offered facts demonstrating that aliens with similar (and arguably less sympathetic) circumstances have received relief. The 2013 U.S. Customs and Border Protection statistics show that aliens who were inadmissible for reasons of fraud were not disqualified from relief. And in addition, Court finds that there are sufficient similarities between the three aliens who obtained relief and Mr. Arizmendi to provide "some evidentiary basis on which relief could have been provided." *Reyes-Bonilla*, 671 F.3d at 1050.

Following a careful balancing of relevant favorable and unfavorable factors as provided by the Field Manual and by regulation, the Court concludes that Mr. Arizmendi has met his burden of establishing plausibility of relief.

**C. With the plausibility of relief, Mr. Arizmendi has shown fundamental unfairness.**

Mr. Arizmendi suffered a due process violation during his 2011 expedited removal proceeding which caused him prejudice because he was plausibly eligible to receive permission to withdraw his application for admission. Consequently, Mr. Arizmendi has demonstrated that his removal proceeding was fundamentally unfair and, therefore, his April 21, 2011 expedited removal cannot stand.

## CONCLUSION

The Court sustains Mr. Arizmendi's collateral attack of his April 21, 2011 expedited removal. The Court therefore **GRANTS** the motion to dismiss Count One of

the Indictment.

**IT IS SO ORDERED.**

Dated: August 20, 2019

Hon. Gonzalo P. Curiel
United States District Judge